GREAT WESTERN SUGAR COMPANY, APPELLANT, V. LAWRENCE L. HEWITT, APPELLEE.

FILED NOVEMBER 9, 1934. No. 29296.

*Mothersead & York,* for appellant.

*Frank P. Johnson* and *Raymond & Raymond, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE JJ., and RAPER, District Judge.

PAINE, J.

This is a compensation case, in which the claimant recovered judgment in the district court for total disability for permanent injuries sustained in an accident December 4, 1931, while employed by the Great Western Sugar Company at its factory at Lyman, Nebraska. Said judgment included attorney's fees in the sum of $150.

The bill of exceptions discloses that the claimant was 42 years of age, the father of six children, and had been employed at common labor by the defendant since the beginning of the sugar-beet campaign on October 7, 1931. At the time of the accident he was assisting in unloading frozen beets from a railroad car, being on top of about eight or nine feet of beets, distributing hot water through pipes to thaw out the beets so they would go out through the dump in the bottom of the car. He did not know that the trapdoors at the bottom of the car had been opened. The beets suddenly started through without warning, and the claimant fell with them, and landed astride an iron beam in the bottom of the car, with his right leg caught and doubled back in sort of a jack-knife position, and his body bent forward. There were about four feet of beets, weighing several tons, on top of him. To release him they dug out the beets from the top down, and it took a half to three-quarters of an hour before he was released, in a semiconscious condition, by getting a rope under his arms and holding his body while the remainder of the beets went down into the chute. He was paid compensation for some 60 weeks, and then it was stopped. His principal injury consisted of two broken vertebræ. After remaining in the Methodist Hospital at Scottsbluff several weeks, he was sent to the Presbyterian Hospital at Denver for three weeks, and was then fitted out with a steel brace and belts from his shoulders to his hips, which held his spine rigid. He wore this brace continuously for about ten months. After it was removed, he went to his home, where he remained in bed for about a month, and then began getting

about on crutches, which he still used at the time of the trial.

Dr. N. H. Rasmussen, a physician and surgeon of Scottsbluff, testified that the claimant was malingering, and that in his opinion the claimant could discard his crutches and walk right off without the aid of them; that he came to this conclusion from his own sense of sight and hearing and feeling, and from a study of the X-ray pictures.

Dr. Frank J. Evans, of Denver, testified that there is no foundation for the complaint of pain made by claimant, and he has no disability in his back as a result of the accident, and that claimant could go right back to work if he would.

Dr. Edward F. Dean, of Denver, also testified that he could find nothing wrong with him at the time of the trial, and that he was a malingerer. He gave as his reasons that the claimant had a bright eye, a healthy-looking skin, red cheeks, and the appearance of a man who had not lost sleep, or had much pain; otherwise, he would be pale and his skin dry. There was other evidence to the same effect.

The claimant testified that, when he tried to get his muscles to act in the lower part of the back below the shoulder-blades, the pain was very severe, and that if his crutches did not rest on level ground he would get a twist in his back that would nearly "knock him out"; that he puts in practically half of his time lying down on the bed; that any twist of the spine, or a sharp jar, aggravates his trouble, and gives him intense pain; that he cannot stand on his feet and stoop forward; that he gets around the house by holding onto the bed or a chair with his arms; that he never had any pain or weakness in his back before this injury.

Dr. F. W. Plehn was called by the claimant, and testified that the X-ray showed a moderate compression fracture of the eleventh and twelfth vertebræ, which was a "mushrooming of the structure" of the vertebræ. He testified that he had examined him carefully two years after the

accident, and that further improvement after such a time had elapsed would be considerably limited. Neighbors who had seen the claimant frequently testified that he always required the crutch, or some article of furniture to rest his hands on, to enable him to get about the house.

The appellant insists that the burden was upon the claimant to show with reasonable certainty that the personal injury was caused by an accident arising out of and in the course of employment, and that the proof must be based on sufficient evidence to remove the case beyond the realm of speculation and conjecture, as held by this court in *Saxton v. Sinclair Refining Co.*, 125 Neb. 468, *Bartlett v. Eaton*, 123 Neb. 599, and *Townsend v. Loeffelbein*, 123 Neb. 791.

In addition to these and other Nebraska cases, the appellant cites two cases from other jurisdictions to support his view that the judgment entered should be set aside. The first of these is *Standard Oil Co. v. Industrial Commission*, 339 Ill. 252, in which case it was claimed that a riveting machine "kicked back" and hurt employee's leg, producing a swelling there. The tumor mass was about 4 inches by 2½ inches, and after the employee had been laid off by reduction of forces, he had this tumor removed, but thrombosis of the artery followed, and the leg had to be amputated. There was little or no support of any accident or injury, while all the medical testimony indicated that this form of tumor was never caused by trauma, but was of gradual growth. In this case, it was properly held that liability for compensation must be based upon facts established by a preponderance of the evidence showing that the claimant has incurred a disability arising out of and in the course of his employment.

The appellant also calls our attention to the case of *Ginsberg v. Burroughs Adding Machine Co.*, 204 Mich. 130. In this case, it was established that a box of steel grated on the little toe of an employee, merely making the surface of the skin red. However, up in the thigh on the same day a large, red swelling appeared, which no evidence dis-

closed had been injured, and an operation followed, and employee died of thrombosis in that leg. There was no evidence of any connection between the pinched toe and the serious difficulty in the thigh, and compensation was rightly refused.

However, these cases have little application to the case at bar, for the wedging of this man under the flow of beets was clearly an accident, and his injury as clearly follows the fracture of the two vertebræ.

In this case, the appellant vigorously contends that the claimant is a malingerer. The exhaustive new Oxford dictionary says that this term was first defined in 1785 in Grose's dictionary as a military term for one who under pretense of sickness evades duty. In recent years it has been very frequently used in compensation cases, and has come to have a distinct meaning when so used.

The term "malinger" means to feign or induce sickness, and a malingerer is one who feigns or induces illness to avoid service or shirk duty, especially a soldier or sailor. *Wells v. Missouri-Edison Electric Co.,* 108 Mo. App. 607.

"Malingering" is a deception practiced by anybody, from which they try to make out that they are sick when they are not sick; and the question to a witness whether a party was malingering or not calls for a conclusion, and is properly excluded. *Brown v. Third Avenue R. Co.,* 43 N. Y. Supp. 1094; *Wells Bros. Construction Co. v. Industrial Commission,* 306 Ill. 191; *Madison Coal Corporation v. Industrial Commission,* 320 Ill. 65.

On a rehearing, "evidence held insufficient to support an award in favor of the claimant; the board's medical expert reporting a malingering element in the employee's claim, which means that he was a 'malingerer,' feigning injury to deceive." *Dunn v. Brooklyn Rapid Transit Co.,* 189 N. Y. Supp. 484.

We may conclude, then, that malingering, as applied to compensation cases, may be defined as a deception practiced by a dishonest employee, by feigning, inducing, or prolonging either sickness or injury, for the purpose of

securing illegal or fraudulent payments therefor under the workmen's compensation law.

In the case at bar, the X-ray photographs clearly show that there was an injury to two vertebræ at the time of the accident. Is it not beyond the power of even modern science to positively disclose either the extent of the original injuries to the nerves, the muscles, and their attachments to these vertebræ, or their present condition? The medical experts called by the appellant blandly charge that this man is a malingerer, and that he is free from any pain. The defendant flatly denies such charge, and since the accident has done no work, and has spent a great deal of time in bed, and is hardly able to hobble about on crutches, and acts as if suffering pain. The trial court had a distinct advantage over this court, in that he could see the injured man move about the courtroom, observe his demeanor while under examination, detect his reaction, if any, to the charge that he was a malingerer, as well as weigh the credibility of the neighbors and relatives as they testified to his every-day conduct in respect to his alleged injury; and, after deliberation, the trial court rejected the opinion of the medical experts that he was a malingerer, and entered judgment in his favor.

The judgment entered by the trial court in the case at bar is not final in the sense that it can never be inquired into again, but section 48-142, Comp. St. 1929, provides that, in a case of this kind, when payments have been ordered to be periodically made for a period longer than six months, at any time after six months an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury, and upon said application being filed the whole question of plaintiff's physical condition can again be inquired into as of that time. *Southern Surety Co. v. Parmely,* 121 Neb. 146; *Updike Grain Co. v. Swanson,* 103 Neb. 872; *Harmon v. J. H. Wiese Co.,* 121 Neb. 137.

This court, taking into consideration all of these facts,

finds no error in the record, and affirms the judgment, with an attorney's fee of $100 in this court.

AFFIRMED.