ELDON GRAUERHOLZ, APPELLANT, V. CORNHUSKER PACKING CO., APPELLEE.

432 N.W.2d 831

Filed December 16, 1988.   No. 88-322.

Debra R. Nickels and James R. Welsh, of Welsh & Sibbernsen, for appellant.

Melvin C. Hansen and Allen J. Potts, of Hansen, Engles & Locher, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

On March 30, 1984, Eldon Grauerholz suffered partial amputation of his left foot as the result of an industrial accident during his employment with Cornhusker Packing Co. and, on January 27, 1986, received an award in the Nebraska Workers' Compensation Court for benefits and compensation based on a 35-percent disability concerning his left foot. See Neb. Rev.

Stat. § 48-121(3) (Cum. Supp. 1986).

Grauerholz filed a petition on March 11, 1987, to modify the 1986 award as the result of an increase in his incapacity from the 1984 injury. Grauerholz sought the modification because, as he alleged, he had "suffered an unusual and extraordinary condition to his body as a whole," which was attributable to the 1984 injury. Neb. Rev. Stat. § 48-141 (Cum. Supp. 1986) in part provides:

> [T]he amount of any agreement or award payable periodically for six months or more may be modified as follows: (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury or that the condition of a dependent has changed as to age or marriage, or by reason of the death of the dependent. . . .

Pursuant to § 48-141, before an employee may obtain a modification of an agreement or award for periodic payment of compensation, increasing the compensation periodically paid on account of the employee's previous compensable injury, the employee must prove, by a preponderance of evidence, an increase in the incapacity due solely to the previous compensable injury. See *Wilson Concrete Co. v. Rork*, 216 Neb. 447, 343 N.W.2d 764 (1984).

"An employee has the burden to show the cause-and-effect relationship involving employment, an industrial injury, and disability." *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 621, 423 N.W.2d 483, 486 (1988).

> Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the

Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court . . . . [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.

*Fees v. Rivett Lumber Co., supra* at 620, 423 N.W.2d at 486. See, also, *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987); Neb. Rev. Stat. § 48-185 (Cum. Supp. 1986).

On March 30, 1984, Dr. Oscar Jardon, an orthopedic surgeon, performed a transmetatarsal amputation of Grauerholz' left foot, a surgical procedure necessitated by Grauerholz' injury, and continued to treat Grauerholz on an outpatient basis until October 11, 1984, when Grauerholz, in Dr. Jardon's opinion, reached "maximal improvement." At that point, Grauerholz had no complaints regarding back or shoulder pain. Dr. Jardon evaluated Grauerholz' disability at 35 percent of the left foot. Dr. Jardon treated Grauerholz on January 24, 1985, when Grauerholz mentioned that he was experiencing "a sense of pressure on the heel" of his left foot. Dr. Jardon described Grauerholz' ambulation:

He was getting around. To be brutally frank, it was very difficult to get the man going and he was very hard to rehabilitate. He would not push himself. I've had a lot of people with various and sundry degrees of amputations and I had the feeling that his sense of disability was greater than in truth it should be based upon experience with other people with the same kind of amputations, and that's the feeling I got all the way through this.

Dr. Jardon again examined and treated Grauerholz in January of 1986 because Grauerholz complained about pain in his lower back and shoulder. Notwithstanding a number of tests, Dr. Jardon was unable to ascertain a reason for the pain mentioned by Grauerholz. Nevertheless, Dr. Jardon prescribed

anti-inflammatory medication to treat Grauerholz' back and shoulder pain.

On May 14, 1986, Grauerholz consulted Dr. Louis Tribulato, an orthopedic surgeon, who detected a heel spur in Grauerholz' left foot. According to Dr. Tribulato's diagnosis, Grauerholz' condition was a "painful heel spur and degenerative arthritis and strain of the lumbar area aggravated by his abnormal gait." Dr. Tribulato treated the heel spur with repeated injections of steroid, and, when the injections failed to provide adequate relief, Dr. Tribulato surgically removed the heel spur on July 7, 1986. In Dr. Tribulato's opinion, Grauerholz' heel spur was partially due to "abnormal weight bearing" as the result of the transmetatarsal amputation and Grauerholz' back pain was the result of an abnormal gait caused by the amputation. Dr. Tribulato concluded that, as the result of the amputation, Grauerholz suffered a 15-percent disability to his body as a whole.

On December 23, 1986, Dr. Jardon treated Grauerholz for the final time and concluded that there were no "organic reasons" for the "quote, unquote, persistent pain" described in Grauerholz' complaints. Because no organic reasons could be isolated as the cause of the pain, Dr. Jardon suggested that Grauerholz be examined by a neurologist to see if the problem was psychological. In Dr. Jardon's opinion, any abnormality in Grauerholz' gait was attributable to "[e]xcessive fixation on his disability" and Grauerholz' heel spur was completely unrelated to the amputation.

A January 20, 1987, letter from a Dr. Fred Pettid, who had examined Grauerholz, contained the conclusion that Grauerholz "should be given 15-20% total body disability based upon his history and the physical findings."

On rehearing, the Workers' Compensation Court found:

> The principal issue which the Court must resolve is whether plaintiff's 35 per cent permanent loss of use of the left foot caused an unusual and extraordinary condition to his body as a whole. The evidence on this point is conflicting. . . .
>
> . . . .
>
> The Court concludes that plaintiff has failed to prove

that his injury on March 30, 1984, to his left foot caused an unusual and extraordinary condition to his body as a whole which would entitle him to any further and additional relief . . . .

On appeal to this court, Grauerholz contends: "The Nebraska Workers' Compensation Court erred in concluding that the appellant has not suffered an unusual or extraordinary injury to the body as a whole which would entitle him to further relief." Grauerholz also contends that Dr. Jardon's testimony is insufficient to support the decision of the Workers' Compensation Court because "Dr. Jardon has had only limited contact with Eldon [Grauerholz] in recent years . . . and also because his testimony is equivocal." Brief for appellant at 11.

The Workers' Compensation Court apparently accepted the diagnosis by Dr. Jardon rather than Dr. Tribulato's diagnosis of Grauerholz' condition.

As we noted in *Gibson v. City of Lincoln*, 221 Neb. 304, 313, 376 N.W.2d 785, 791 (1985): "In the absence of discredit as a matter of law, the 'trier of fact' remains the sole judge of a witness' credibility and the testimony's weight."

Grauerholz' assault on Dr. Jardon's testimony is aimed directly at the physician's credibility as a witness and the weight to be accorded his testimony. Those matters were resolved adversely to Grauerholz by the Workers' Compensation Court. Given the burden of proof placed on Grauerholz, and considering our statutorily limited review, it cannot be said that the Workers' Compensation Court's decision was clearly erroneous. The decision of the Workers' Compensation Court is evidentially justifiable and is, therefore, affirmed.

AFFIRMED.