WARREN STARKS, APPELLANT, V.
CORNHUSKER PACKING CO., APPELLEE.

573 N.W. 2d 757

Filed February 20, 1998.    No. S-97-318.

Thomas F. Dowd, of Dowd & Dowd, for appellant.

Mark J. Peterson, of Erickson & Sederstrom, P.C., for appellee.

32

White, C.J., Caporale, Wright, Connolly, Gerrard, Stephan, and McCormack, JJ.

Per Curiam.

This case involves the modification of appellant Warren Starks' workers' compensation award. We affirm, since there was sufficient, competent medical testimony in the record warranting the modification. See Neb. Rev. Stat. § 48-185(3) (Reissue 1993). However, we also modify the award because the compensation court incorrectly applied the modification award retroactively to the date of the decrease in incapacity.

On August 25, 1993, the Nebraska Workers' Compensation Court determined Starks was permanently and totally disabled. Cornhusker Packing Company (Cornhusker), Starks' employer, made payments in compliance with the award. For reasons undisclosed in the record, Cornhusker later obtained a private investigator to observe Starks. Based on the investigator's observations from June to October 1995, Cornhusker obtained information that Starks was involved in various forms of unlawful activity, including an illegal cab service ("jitney" service), buying and selling food stamps, and selling illegal drugs. Cornhusker also obtained evidence that Starks was selling used cars and was climbing trees to stay physically fit. Relying on this information, Cornhusker terminated Starks' benefits as of October 29, 1995, without obtaining a modification award. In response, Starks filed a motion in the compensation court, requesting an order requiring Cornhusker to resume making total disability payments retroactively from October 29 and to pay a 50-percent waiting penalty, interest, and reasonable attorney fees. After Starks filed his motion, Cornhusker filed an application for modification that claimed Starks' incapacity decreased on November 30.

A modification hearing was held on June 3, 1996. At the hearing, Starks presented the deposition testimony of Dr. Louis Tribulato. Dr. Tribulato opined that Starks' permanent impairment had not decreased and that his physical capabilities had not increased. The compensation court noted, however, that Dr. Tribulato started treating Starks in April 1995 and that Dr. Tribulato last treated Starks on October 17. In response,

Cornhusker offered the medical report of Dr. Lonnie Mercier. In his report, Dr. Mercier essentially concluded that Starks was capable of participating in most gainful employment and that he was not "totally disabled." In addition to the opinions of Drs. Tribulato and Mercier, the court also noted the evidence regarding Starks' legal and illegal activities, Starks' testimony in which he indicated he climbs trees to stay physically fit, Starks' testimony that he is running up his medical bills so that his insurance company will "lump sum" him, and Starks' conditions of probation that require Starks to "be employed or provide proof that employment is being sought."

Based on the aforementioned evidence, the compensation court modified Starks' award, retroactive to August 27, 1995, finding that Starks was not entitled, after said date, to total disability payments and was entitled only to the loss of earning power and permanent partial disability benefits as provided in the original award. The court specifically stated that "the activities of the plaintiff involving 'jitney services' as set forth in the surveillance and audiotapes, in addition to the opinions of Dr. Mercier[,] are sufficient to show a decrease of incapacity due solely to the injury in regard to plaintiff's physical condition . . . ."

Based on the compensation court's modification award, Starks filed an application for review with the Workers' Compensation Court review panel on August 13, 1996. The review panel affirmed the court's award. In turn, Starks filed a notice of appeal on March 20, 1997, and a petition to bypass on April 18. Pursuant to our power to regulate the caseload of the Nebraska Court of Appeals, we removed the case to our docket. See Neb. Rev. Stat. § 24-1106 (Reissue 1995).

Pursuant to § 48-185, an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of the court's powers; (2) the judgment, order, or award was procured by fraud; (3) there is insufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1997). Upon appellate review, the

findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995). If the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court, an appellate court is precluded from substituting its view of the facts for that of the Workers' Compensation Court. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). A finding upon review by the compensation court regarding whether an applicant's incapacity has increased under the terms of Neb. Rev. Stat. § 48-141 (Reissue 1993) is a finding of fact. See, *Gomez v. Kenney Deans, Inc.*, 232 Neb. 646, 441 N.W.2d 632 (1989); *Grauerholz v. Cornhusker Packing Co.*, 230 Neb. 641, 432 N.W.2d 831 (1988).

Starks contends the compensation court erred when the court (1) modified the award when there was no medical opinion that Starks experienced a decrease in his permanent impairment or physical incapacity since the final adjudicated award of permanent total disability; (2) retroactively modified the award by discontinuing total disability benefits as of August 27, 1995; and (3) denied a waiting penalty, attorney fees, and interest by retroactively modifying the award to justify nonpayment of adjudicated benefits.

Section 48-141 provides, in pertinent part, that "the amount of any agreement or award . . . may be modified . . . *on the ground of increase or decrease of incapacity due solely to the injury* . . . ." (Emphasis supplied.) To obtain a modification, the applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Gomez, supra*; *Grauerholz, supra.* In proving the increase or decrease in incapacity, the applicant must prove there now exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had previously been made. *Gomez, supra.* To determine whether an increase or decrease in incapacity has occurred, " 'the whole question of plaintiff's *physical condition* can again be inquired into . . . .' " (Emphasis supplied.) *Camp v. Blount Bros. Corp.*, 195 Neb.

459, 462, 238 N.W.2d 634, 636-37 (1976) (quoting *Great Western Sugar Co. v. Hewitt*, 127 Neb. 790, 257 N.W. 61 (1934)).

In modifying the award, the compensation court found the opinions of Dr. Mercier, as well as Starks' activities involving the jitney services, were sufficient to show a decrease of incapacity due solely to the injury in regard to Starks' physical condition since the August 25, 1993, award. The court further found that as of August 27, 1995, Starks was not permanently and totally disabled and was capable of remunerative employment since said date. Therefore, in determining whether the compensation court's decision was based on sufficient, competent evidence, we must examine Dr. Mercier's testimony and Starks' alleged involvement in illegal activity. See § 48-185(3).

Medical testimony offered to support a workers' compensation award must be based on a reasonable degree of medical certainty. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). In *Welke v. City of Ainsworth*, 179 Neb. 496, 504, 138 N.W.2d 808, 813 (1965), we stated that "[w]here the [physician's] testimony gives rise to conflicting inferences of equal degree of probability so that the choice between them is a mere matter of conjecture, a compensation award cannot be sustained." However, "[w]here . . . the inferences are not equally consistent and the more probable conclusion is that for which the claimant contends, then the claimant sustains his burden of proof on the element involved." *Id.* at 504-05, 138 N.W.2d at 813. We have also stated that "magic words" indicating an expert's opinion is based on a reasonable degree of medical certainty or probability are not necessary. *Hohnstein v. W.C. Frank*, 237 Neb. 974, 982, 468 N.W.2d 597, 603 (1991). As we said in *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992), an expert opinion is not validated or invalidated based solely on the presence or lack of the magic words "reasonable medical certainty," but, rather, the testimony should be judged in view of the entirety of the expert's opinion.

In modifying Starks' award, the compensation court observed that Dr. Mercier evaluated Starks on May 2, 1996, and diagnosed Starks with osteoarthritis of the left elbow, cervical spondylosis, and bilateral carpal tunnel release for bilateral

carpal tunnel syndrome. The court also noted that Dr. Mercier stated that determining whether Starks experienced an increase or decrease in incapacity since 1993 would be difficult to ascertain as Dr. Mercier had not seen Starks at that time. However, Dr. Mercier stated that he certainly did not consider Starks "totally disabled." Dr. Mercier further stated that while Starks has some restricted left elbow movement, pain as a result of osteoarthritis, and some minor cervical spine discomfort and bilateral hand discomfort, none of these conditions, individually or collectively, would render him totally disabled. Moreover, Dr. Mercier stated that "assuming that Mr. Starks was previously unable to engage in any gainful employment then I would express the opinion that there has been a change in that Mr. Starks does, indeed, appear capable of taking part in most physical employment." Dr. Mercier concluded that Starks is certainly employable and that if he wants to pursue work on his own and wishes to take part in gainful employment, Dr. Mercier would be comfortable releasing all restrictions.

Viewing Dr. Mercier's medical report from the entirety of his opinion does not lead to conflicting inferences. See, *Edmonds, supra*; *Welke, supra*. Dr. Mercier concluded that Starks' cervical spine, upper extremities, and hands displayed minimal signs of disability and that Starks was certainly capable of participating in gainful employment. While Dr. Mercier conceded that Starks exhibits some discomfort in his spine, elbow, and hands, Dr. Mercier stated that none of these conditions would render Starks totally disabled or unemployable. Dr. Mercier further stated that assuming Starks was unable to engage in gainful employment at one time, he is now capable of taking part in most physical employment. More importantly, Dr. Mercier flatly stated that he did not consider Starks "totally disabled." In response, Starks offered no other evidence of his continued incapacity other than the deposition testimony of Dr. Tribulato, a physician who had not treated Starks since October 1995.

In analyzing these facts, we note that the compensation court's findings of fact will not be disturbed unless clearly wrong. *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995). Determining whether an increase or decrease of incapacity has occurred is a finding of fact. *Gomez v. Kenney Deans, Inc.*, 232

Neb. 646, 441 N.W.2d 632 (1989). We also note that if the record contains evidence to substantiate the compensation court's factual conclusions, an appellate court is precluded from substituting its own view of the facts. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). Because the aforementioned evidence is sufficient to support the modification award, we find the compensation court was not clearly wrong in relying on Dr. Mercier's medical report. See § 48-185(3).

Since we determine that the medical testimony is sufficient to support the court's decision, we need not consider whether the alleged illegal activities demonstrated a decrease in incapacity.

In Starks' second assignment of error, he contends the compensation court erred in retroactively modifying his award. In the court's order, the Workers Compensation Court determined Starks had not been totally and permanently disabled since August 27, 1995, and, in turn, ruled Starks was entitled to only partial disability benefits from said date. The court credited Cornhusker for the disability payments made pursuant to the prior total permanent disability award.

Starks argues that by virtue of the principle of res judicata, workers' compensation awards cannot be changed once a final adjudication has occurred unless an increase or decrease in incapacity is demonstrated via the procedural mechanism provided in § 48-141. In response, Cornhusker contends that workers' compensation awards can be modified retroactively because nothing in § 48-141 prohibits such course of action.

This court has never specifically addressed whether a modification award, finding that an increase or decrease in incapacity has occurred, can be applied retroactively. In analyzing this issue of first impression, we initially note that "[w]hen an award is modified for a reason not based on change of condition, but going to some error in the original award, the correction may be made retroactive to the date of the original award, unlike a modification for changed condition." 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 81.52(d) at 15-1194.146 and 15-1194.148 (1997). The underlying basis for such a distinction is that a modification award, retroactively applied to the date of the original award, would effectively afford the parties involved an opportunity to relitigate the orig-

inal award. Such action is prohibited by the principle of res judicata. See, generally, *Nice v. IBP, inc.*, 226 Neb. 538, 412 N.W.2d 477 (1987); *Smith v. Baker's Local No. 433 Welfare Fund*, 221 Neb. 215, 375 N.W.2d 922 (1985). This is the same argument made by Starks. However, Starks fails to recognize that the compensation court did not modify his award retroactively to the date of the original award, but, rather, retroactively to the date of the change in condition. Nonetheless, Starks also argues that even if the compensation court possessed jurisdiction to modify the award, his benefits could have only been modified as of the date of the August 7, 1996, modification award, not retroactive to August 27, 1995. Starks' argument is partially correct.

In the instant case, Cornhusker unilaterally stopped making payments to Starks on October 29, 1995. Not until 1 month later, on November 30, did Cornhusker file an application for modification. The compensation court modified the award on June 3, 1996; yet the compensation court applied the award retroactively to the date Starks' incapacity decreased, August 27, 1995.

A modification award cannot be applied retroactively beyond the date the application for the modification is filed. For example, the Georgia Court of Appeals stated: " 'A new award entered on the basis of a change in condition "cannot be effective to modify or set aside the previous award as to any time prior to the date of the application therefor." ' " *Anglin v. St. Paul-Mercury Indemnity Co.*, 106 Ga. App. 395, 399, 126 S.E.2d 913, 915 (1962). See, also, *Zurich Insurance Co. v. Cooper*, 106 Ga. App. 437, 127 S.E.2d 165 (1962). Nebraska also follows this line of reasoning. In *ITT Hartford v. Rodriguez*, 249 Neb. 445, 543 N.W.2d 740 (1996), we said a workers' compensation award is in full force and effect, as originally entered, until the award is modified pursuant to the procedure set forth in § 48-141. Likewise, in *Ludwickson v. Central States Electric Co.*, 142 Neb. 308, 6 N.W.2d 65 (1942), we said that once a determination has been made regarding the claimant's disability, the correctness of that determination may not be questioned. Moreover, employers are prohibited from unilaterally modifying workers' compensation awards. See

*Blanco v. Kent Gen. Hospital*, 56 Del. 97, 190 A.2d 277 (1963), *aff'd as modified* 57 Del. 90, 195 A.2d 553.

Based on the information obtained from the private investigator, Cornhusker unilaterally terminated Starks' payment of benefits. The compensation court modified Starks' award retroactively to the date of the change in Starks' condition, August 27, 1995, not the date Cornhusker filed the application for modification, November 30. The compensation court's award is modified to the extent that Cornhusker owes Starks total and permanent disability payments from the time it unilaterally discontinued paying benefits to Starks, October 29, 1995, until the date Cornhusker filed an application for modification, November 30—1 month of workers' compensation benefits.

In Starks' final assignment of error, he alleges the compensation court erred when the court denied him attorney fees, interest, and a waiting penalty. Neb. Rev. Stat. § 48-125 (Reissue 1993), provides, in pertinent part:

> [I]f the employee files an application for a review before the compensation court from an award of a judge of the compensation court when the amount of compensation due is disputed *and obtains an increase in the amount of such award*, the compensation court may allow the employee a reasonable attorney's fee . . . and the . . . Supreme Court may in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in the . . . Supreme Court.

(Emphasis supplied.) See *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990). Section 48-125 also provides that "[w]hen an attorney's fee is allowed . . . there shall further be assessed against the employer an amount of interest on the final award obtained . . . ." The compensation court incorrectly modified Starks' award retroactive to the date of his decrease in incapacity. Even though the increase in Starks' award, as herein provided, is trivial at best—1 month of benefits—Starks is still entitled to recover a reasonable attorney fee and interest, since he did, in fact, obtain an increase in the award as required by § 48-125. Starks is awarded $500 in attorney fees and interest.

Starks also contends the waiting-time-penalty provision of the Nebraska Workers' Compensation Act should be applied

and enforced in this case. See § 48-125(1). The 50-percent penalty for waiting time applies when payments are delinquent after 30 days' notice of disability has been given or there is no reasonable controversy and the employer refuses or neglects to pay compensation for 30 days after the injury. *Briggs v. Consolidated Freightways*, 234 Neb. 410, 451 N.W.2d 278 (1990). To avoid the payments assessable under § 48-125(1), an employer need not prevail in opposing an employee's claim for compensation, but the employer must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation. *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989). Whether a reasonable controversy exists is a question of fact. See *Marshall v. Columbus Steel Supply*, 187 Neb. 102, 187 N.W.2d 607 (1971). Based on the report issued by Dr. Mercier, we find that Cornhusker had an actual basis, in fact, for disputing Starks' claim. As such, Starks' request for a waiting-time penalty is denied.

Since there was sufficient, competent evidence in the record supporting the modification award, we affirm as modified.

AFFIRMED AS MODIFIED.

WHITE, C.J., dissents.