IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

MISCHO V. CHIEF SCHOOL BUS SERV.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES MISCHO, APPELLANT,
V.
CHIEF SCHOOL BUS SERVICE, APPELLEE.

Filed August 19, 2014.    No. A-13-011.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Roger D. Moore, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Abigail A. Wenninghoff, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

James Mischo appeals a decision from the Workers' Compensation Court related to two injuries sustained by Mischo while employed by Chief School Bus Service (Chief)--one occurring in 2008 and the other in 2011. An initial award was entered by the trial court on May 9, 2012. No appeal was taken from that decision. A further award was entered on December 5, and it is from that decision Mischo has appealed. However, Mischo does not appeal the substance of the trial judge's further award; rather, he takes issue with the pleadings and procedure employed by Chief to obtain the further award. Mischo asserts that Chief sought an unauthorized modification of a Workers' Compensation Court award rather than a further award. We agree with the trial court's determination that Chief sought a further award, not a modification, and we affirm the December 5 further award.

BACKGROUND

Following the initial trial held on April 12, 2012, the trial judge entered an award on May 9, wherein the court concluded that Mischo sustained a workplace injury in September 2008 to his right hip while employed as a busdriver for Chief and that he was entitled to a 5-percent loss of earning capacity for that injury. The award also concluded that Mischo sustained a workplace

- 1 -

injury in April 2011 which aggravated a preexisting cervical condition and that he was entitled to temporary total disability (TTD) payments from August 19, 2011, "through April 12, 2012, and continuing into the future for so long as, and until, plaintiff reaches maximum medical improvement." The court further noted that the parties had stipulated Mischo had not yet reached maximum medical improvement (MMI) for the April 2011 injury, and therefore, the court held that it was "premature for the Court to determine any issues with respect to loss of earning capacity or vocational rehabilitation."

Following the entry of the award on May 9, 2012, Chief filed a "Motion for an Order Nunc Pro Tunc pursuant to Neb. Rev. Stat. § 48-180, or a Motion for Credit and/or a Motion to Modify" on May 16, indicating that Mischo had reached MMI on April 16, 2012, and further requesting that a monetary credit for overpayments on the 2008 injury be applied toward disability benefits for the 2011 injury. On May 21, the trial judge denied that motion. (The foregoing motion and result is noted in the trial court's December 5 further award; however, the documents themselves were not included in the record before this court.) On May 25, Chief filed a "Petition for Modification," asserting, among other things not relevant to this appeal, that Chief should be entitled to stop paying TTD to Mischo since he had reached MMI on April 16.

Mischo answered Chief's petition for modification admitting and denying certain allegations not relevant to this appeal, and affirmatively alleging that Chief's petition "is barred and/or does not state a proper cause of action upon which relief can be granted in light of the timing of the same."

Before resolution of the petition for modification that had been filed May 25, 2012, Chief filed another pleading on November 14 entitled "Petition for Modification and Motion for Expedited Trial Date." Since the issues raised in the November petition were identical to those raised in the May petition, Mischo waived any timeliness issues and stipulated to trial being scheduled for November 16. However, Mischo claimed the trial court was without jurisdiction to rule on any relief requested in Chief's May petition, since it was filed before 6 months had passed after the entry of the May 9 award, and that this was in violation of Neb. Rev. Stat. § 48-141 (Reissue 2010), which allows for modifications of awards only after 6 months have passed since the entry of the award.

In the further award entered December 5, 2012, the trial judge determined that although not properly captioned, Chief was seeking a "further award" to address the issues that were not determined in the May 9 award; specifically, a determination that Mischo's temporary benefits should cease in light of him reaching MMI and a determination of what permanent disability benefits Mischo may be entitled to, if any. The parties stipulated that Mischo was placed at MMI by a treating physician on April 16.

The trial judge noted that § 48-141 did not apply to the proceeding because "[t]he issues of whether plaintiff was entitled to permanent partial disability benefits," and the "nature and extent of such benefits, were not decided by the Court in its May 9, 2012 Award." The court concluded that "there is nothing for this Court to modify with respect to plaintiff's right to receive permanent partial disability benefits." The trial court concluded it had jurisdiction over the May petition, dismissed the November petition, and proceeded to determine that Mischo had a 20-percent loss of earning capacity related to his April 2011 work injury. The court denied Chief's request for a credit of benefits overpaid and also denied the request to apportion any of

the 20-percent loss of earning capacity from the 2011 injury to the 2008 injury. The trial court denied Mischo's request for vocational rehabilitation benefits. These substantive aspects of the trial court's decision were not appealed or cross-appealed.

ASSIGNMENTS OF ERROR

Mischo asserts four assignments of error, two of which are duplicative and therefore treated as one assigned error: (1) The trial court could not modify or change the original award other than by the process set forth in § 48-141; (2) Chief's May 25, 2012, petition should not have been considered by the trial court since the May 9 award was not yet final; and (3) the trial court was wrong to "re-title" and "re-word" Chief's May 25 pleading in order to get to the merits of the case.

STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012).

Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determination. *VanKirk v. Central Community College*, 285 Neb. 231, 826 N.W.2d 277 (2013).

ANALYSIS

*Termination of Temporary Disability Benefits*
*Does Not Require Modification Action*
*Pursuant to § 48-141.*

Mischo argues that the temporary disability benefits awarded to him in the May 9, 2012, award could only be terminated by complying with the modification procedure set forth in § 48-141 (which includes a 6-month waiting provision) unless the initial award contains sufficient language to allow for the termination of those benefits without a further order. Mischo claims that the language in the award in this case was not sufficient. The May 9 award states:

> The Court finds plaintiff is temporarily totally disabled as a result of the April 11, 2011, injury to his cervical spine and shall receive temporary total disability benefits in the amount of $253.73 per week from August 19, 2011, through April 12, 2012, *and continuing into the future for so long as, and until, plaintiff reaches maximum medical improvement*. The parties stipulated, and the Court finds, that plaintiff has not yet reached maximum medical improvement for the cervical spine injuries sustained on April 11, 2011. Accordingly, it is premature for the Court to determine any issues with respect to loss of earning capacity or vocational rehabilitation.

(Emphasis supplied.)

The December 5, 2012, further award determined that Mischo reached MMI on April 16 and that he was entitled to permanent partial disability (PPD) payments of $69.87 per week (as

- 3 -

corrected by the order nunc pro tunc filed December 14) from that day forward. However, relying on *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 575 N.W.2d 757 (1998), the trial judge also concluded that since Chief did not file its "petition to modify" until May 25, Mischo's TTD benefits could not be changed prior to that date. Accordingly, the trial judge ordered Chief to pay TTD benefits of $253.73 per week through May 25 and, thereafter, ordered Chief to pay PPD benefits of $69.87 per week commencing May 26, for 259 6/7 weeks. Neither party appealed this determination. Rather, Mischo argues that § 48-141 is the only procedure available to address a change in benefits and that therefore, the statute's 6-month waiting period applies, unless there is specific language in the award that "sets forth a mechanism or manner in which to convert temporary benefits into permanent benefits." Brief for appellant at 10-11. Mischo then discusses *Weber v. Gas 'N Shop*, 280 Neb. 296, 786 N.W.2d 671 (2010), and explains why the case before us is distinguishable.

In *Weber v. Gas 'N Shop, supra*, the Nebraska Supreme Court concluded that when an employer's conversion of TTD benefits to PPD benefits was in accordance with an initial award, a modification proceeding under § 48-141 is not required. In *Weber*, the injured employee was awarded TTD benefits "for so long in the future as [she] remains temporarily totally disabled." *Weber v. Gas 'N Shop*, 280 Neb. at 298, 786 N.W.2d at 673. The award in that case also provided that when the injured employee "reaches maximum medical improvement, she shall be entitled to the statutory amounts for any residual disability," and that if the parties were "unable to agree on the extent, if any, of permanent disability or on [the injured employee's] entitlement to vocational rehabilitation services, either party may file a further petition herein for the determination of such issues." *Id.*

As Mischo argues in this case, the injured employee in *Weber* likewise argued that absent a modification by the employer pursuant to § 48-141, she was permitted to continue receiving temporary benefits. Section 48-141 states, in relevant part:

[T]he amount of any agreement or award payable periodically may be modified as follows: (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury or that the condition of a dependent has changed as to age or marriage or by reason of the death of the dependent. In such case, the same procedure shall be followed as in sections 48-173 to 48-185 in case of disputed claim for compensation.

In *Weber*, the injured employee characterized the employer's decision to convert its payments of TTD benefits to PPD benefits as an improper unilateral cessation of TTD benefits. The Nebraska Supreme Court disagreed and stated that "[t]o the contrary, the change in disability payments was not a unilateral act by appellees, but instead was both required and outlined under the 1993 award." *Weber v. Gas 'N Shop, supra*. The court pointed out that once the "maximum medical improvement information and the permanent disability rating" was given, "appellees had only to do the math, which they did." *Id.* at 305, 786 N.W.2d at 678. The court also noted that if there was any disagreement with that conversion, a further petition could have been filed. The court said:

This conversion was not a modification of an "amount of any award" under § 48-141, but, to the contrary, was in compliance and in obedience to the amounts inherent in the 1993 award. Because no modification of the 1993 award was implicated when appellees converted from paying temporary total to permanent partial disability, appellees were not required to seek a modification under § 48-141.

*Weber v. Gas 'N Shop*, 280 Neb. 296, 305, 786 N.W.2d 671, 678 (2010).

Mischo argues that the language used in the trial court's award in this case is distinguishable from the language in *Weber* and that therefore, *Weber* should not control the outcome here. While we agree that the award in the case before us does not have the exact same language as the initial award in *Weber*, we do not agree that *Weber* should not apply.

In *Weber*, the award stated that when the injured employee reached MMI, she would be entitled to "statutory amounts for any residual disability," and that if "the parties are unable to agree on the extent, if any, of permanent disability or on [the injured employee's] entitlement to vocational rehabilitation services, either party may file a further petition herein for the determination of such issues." 280 Neb. at 298, 786 N.W.2d at 673. As noted, this exact language was not used in Mischo's case; however, the trial court was clear that issues remained with regard to a permanency rating and vocational rehabilitation. The initial award stated that Mischo was entitled to TTD benefits from August 19, 2011, through the date of trial, "and continuing into the future for so long as, and until, plaintiff reaches maximum medical improvement." The trial court's language makes it clear that Mischo was entitled to only TTD benefits "until" he reached MMI and that loss of earning capacity and vocational rehabilitation could not be determined until after that time. And as stated in *Weber v. Gas 'N Shop, supra*, the determination of the permanent disability could be agreed upon between the parties based on the medical and vocational evidence provided, and if agreement could not be reached, then either party could petition for further award, since those issues were not addressed in the initial award. The trial court's language noted in *Weber* referring to filing a further petition may have been helpful if used in this case; however, we find the determinative language before us to be the trial court's specific holding that Mischo was entitled to TTD benefits "until" he reached MMI. At that point, the temporary benefits would terminate and the parties could either agree on permanent disability and vocational rehabilitation, if applicable, or otherwise petition for further award, as discussed in *Weber*.

Mischo agrees that "[d]epending upon the wording of an award the Defendant may unilaterally stop paying temporary benefits." Brief for appellant at 17. However, Mischo argues that, in order to do that and avoid a modification action pursuant to § 48-141, the trial court's language in this case needed to "contain specific language that permanent benefits should be paid after maximum medical improvement was reached." Brief for appellant at 12. We disagree that such language is necessary. Just because a person has a temporary disability does not mean permanent disability automatically follows. When MMI has been reached, then temporary disability benefits should stop, and it then becomes the burden of the injured party to prove if there is any permanent disability. As explained in *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 280, 826 N.W.2d 845, 854 (2013):

Temporary disability benefits should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). Simply stated, when an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, permanent. *Id.* Temporary disability benefits are discontinued at the point of maximum medical improvement, because a disability cannot be both temporary and permanent at the same time. See *id.* Temporary payments do not continue after maximum medical improvement has been reached by the employee.

The *Visoso* court goes on to state:

> Permanent disability is an essential element of an employee's claim in workers' compensation, and therefore, the burden rests with the employee to prove the elements of his or her compensation claim. [Citation omitted.] After reaching maximum medical improvement, [the injured employee] has the burden of proving that his injury caused permanent impairment of his body as a whole and that his permanent impairment resulted in a loss of earning capacity.

285 Neb. at 280, 826 N.W.2d at 854. Accordingly, language to terminate temporary disability payments upon MMI is sufficient so long as the language makes it clear that such payments are only to be made until MMI, as the trial court did in Mischo's case. It then becomes the injured party's burden at that point to prove whether any permanent disability existed following MMI.

We agree with the trial court's analysis in the December 5, 2012, further award, where the court specifically addressed why this matter could not be characterized as a modification action pursuant to § 48-141:

> The issues of whether plaintiff was entitled to permanent partial disability benefits, and, if so, the nature and extent of such benefits, were not decided by the Court in its May 9, 2012 Award. Thus, presently, there is nothing for this Court to modify with respect to plaintiff's right to receive permanent partial disability benefits. Consequently, the Court finds § 48-141 does not apply to this particular proceeding to determine the issues raised by defendant.

The trial court's conclusion is also supported by *Weber v. Gas 'N Shop*, 280 Neb. 296, 305, 786 N.W.2d 671, 678 (2010), where the Nebraska Supreme Court stated that "[b]ecause no modification of the 1993 award was implicated when appellees converted from paying temporary total to permanent partial disability, appellees were not required to seek a modification under § 48-141." Accordingly, Mischo's reliance on § 48-141 and its requirement that parties have to wait 6 months to "modify" an award is misplaced, since the termination of temporary disability payments when MMI is reached does not require a modification proceeding. Chief was not required to wait the 6 months set forth in § 48-141 before filing its petition to terminate temporary disability benefits.

Although neither party appealed the matter, for the sake of completeness, we want to note that the trial court's reliance on *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 575 N.W.2d 757 (1998), to determine the appropriate date to retroactively terminate Mischo's TTD benefits was misplaced because *Starks* was a modification action in accordance with § 48-141; whereas this case was not, as the trial court itself concluded. *Starks* states that "[a] modification award cannot

be applied retroactively beyond the date the application for modification is filed." 254 Neb. at 37, 575 N.W.2d at 763. Since this was not a modification action, but, rather, a request for further award, we question the trial court's application of *Starks* in this instance and the impact of its application on the trial court's decision to terminate TTD benefits only as far back as the date the petition was filed rather than at the time of MMI. However, as noted, neither party appealed this issue, and we decline to address it further.

*Timing of Chief's May 25, 2012, Petition*
*in Relation to May 9 Award.*

Mischo argues that Chief could not file its May 25, 2012, petition before the 30 days had lapsed after the entry of the May 9 award because "it cannot be said that an award's findings can be modified before they are even final." Brief for appellant at 15. However, Mischo also states that "if this Court determines no modification was required then this argument does not apply." Brief for appellant at 16. Since we have concluded the underlying action was not a modification action, we see no value in addressing Mischo's argument, as he himself concedes his argument would have no merit under these circumstances.

*Caption on Chief's May 25, 2012, Pleading.*

Mischo asserts that it was error for the trial judge to ignore the title of Chief's May 25, 2012, pleading ("Petition for Modification") and the request therein to modify the May 9 award pursuant to § 48-141. In referencing the various pleadings filed by Chief, the trial judge stated in the further award:

It is clear from defendant's May 16, 2012, Motion for an Order Nunc Pro Tunc that defendant has been trying since early May, 2012, to obtain relief based on the fact plaintiff reached maximum medical improvement 4 days after trial. Because the parties stipulated plaintiff had not reached maximum medical improvement as of April 12, 2012, the only method by which defendant can obtain relief is through an action for a further award, not a motion or petition to modify a previous award.

Plaintiff has been aware since May 16, 2012, that defendant is attempting to obtain an order limiting plaintiff's receipt of temporary benefits, and awarding permanent disability benefits, if any, based on plaintiff achieving maximum medical improvement. Defendant should not be penalized by the fact it inartfully titled its action as a Petition for Modification instead of a Petition for Further Award. The Court interprets defendant's May 25, 2012, Petition for Modification as a request for a further award on the issues that were left undecided in the May 9, 2012 Award.

We find no error in the trial court's decision to treat Chief's petition as one for further award rather than one for modification, despite how Chief captioned its pleading. Citing to several past Nebraska Supreme Court cases, we stated in *Lee Sapp Leasing v. Ciao Caffe & Espresso, Inc.*, 10 Neb. App. 948, 953, 640 N.W.2d 677, 683 (2002), that "the character of a pleading is determined by its content, not by its caption." Irrelevant allegations or a request for additional inappropriate relief does not prevent a pleading from being appropriate to raise issues otherwise pled, so long as there is reasonable notice of the relief sought; and notwithstanding the name put on a caption, the character of a pleading should be judged by its contents. *Id.*

As the trial court noted above, Chief's attempt to terminate TTD benefits was clear since it first filed a motion for an order nunc pro tunc on May 16, 2012. Regardless of how the May 25 pleading was titled, Mischo was aware that Chief sought to terminate temporary disability benefits in light of him reaching MMI. Mischo's desire to have the underlying action treated as a modification, thereby invoking the 6-month waiting period, is understandable given the difference between his TTD benefits of $253.73 per week versus his PPD benefits of $69.87 per week. The longer Mischo could avoid a decision on the termination of temporary disability, the more he would receive in benefits. However, such an outcome is not supported by the law, nor should such an outcome be reached simply because of an error in captioning and pleading when the relief sought was clear.

Finally, although not raised by either party on appeal, for the sake of completeness and to avoid confusion in the future, we note that on May 16, 2012 (7 days after the entry of the initial award), Chief filed a document titled "Motion for an Order Nunc Pro Tunc pursuant to Neb. Rev. Stat. § 48-180, or a Motion for Credit and/or Motion to Modify." This motion was denied in all respects by the trial court. That led to the May 25 filing of the "Petition for Modification," at issue before us presently. It would appear that once again the choice of caption may have created confusion about relief that may have been available at that point in time. We first point out that the amendments to the workers' compensation statutes in 2011 included an amendment to Neb. Rev. Stat. § 48-180 (Cum. Supp. 2012), which became operative August 27, 2011, and states:

> The Nebraska Workers' Compensation Court may, on its own motion or on the motion of any party, modify or change its findings, order, award, or judgment at any time before appeal and within fourteen days after the date of such findings, order, award, or judgment. The time for appeal shall not be lengthened because of the modification or change unless the correction substantially changes the result of the award.

As stated in the "Effect of amendments" section of Neb. Stat. Ann. § 48-180 (LexisNexis 2012): "The 2011 amendment, in the first sentence, added 'or on the motion of any party,' substituted 'fourteen days after' for 'ten days from,' and deleted 'for the purpose of correcting any ambiguity, clerical error, or patent or obvious error' at the end; and substituted 'modification or change' for 'correction' in the second sentence." See Neb. Rev. Stat. § 48-180 (Cum. Supp. 2012). The statutory revisions give much greater leeway to either the court or the parties in making changes to a final order, clearly expanding on the prior nunc pro tunc limitations. In this case, the trial court entered an award on May 9, 2012. Chief's May 16 motion was filed within 14 days of that final order, and no appeal had been filed at that point. So while relief may have been more immediately available under § 48-180, the May 16 motion has no bearing on this appeal, since the issue was not raised. As noted, it was discussed here only to avoid confusion in the future as to how § 48-180 may be used and applied.

## CONCLUSION

The workers' compensation trial court was not required to treat the underlying action as one for modification pursuant to § 48-141, regardless of how the action was captioned, and we therefore affirm the court's decision in all respects.

AFFIRMED.