TERRY BRONZYNSKI, APPELLANT, V.
MODEL ELECTRIC, INC., APPELLEE.
707 N.W.2d 46

Filed December 20, 2005.    No. A-05-054.

Ross A. Stoffer, of Mueting & Stoffer, for appellant.

James D. Hamilton, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Terry Bronzynski appeals an order of a three-judge review panel of the Nebraska Workers' Compensation Court, which reversed in part, and in part affirmed a decision of a single judge of the Workers' Compensation Court upon an application to modify an award of benefits. Bronzynski asserts that the review panel erred in reversing the trial court's decision to increase his permanent partial disability award, in failing to award further temporary total disability benefits, and in failing to award additional penalties and fees. We conclude that in cases involving an application to modify a prior award of permanent partial disability benefits, wherein the applicant must demonstrate a change in incapacity, a showing of change in the applicant's impairment and disability is required. We find that while Bronzynski showed a change in impairment, he failed to satisfy his burden because he did not also demonstrate that he sustained a change in disability. Additionally, we find that the trial court appropriately awarded attorney fees regarding an award of delinquent medical payments. The trial court was also correct in not awarding a 50-percent waiting-time penalty, because under the pertinent 50-percent waiting-time penalty provision, such a penalty is not available for an award of delinquent medical expenses. Further, the trial court was correct in not awarding interest, since interest is assessable only on "weekly compensation benefits" under

Neb. Rev. Stat. § 48-125 (Reissue 2004). Therefore, we affirm the order of the review panel.

## II. BACKGROUND

### 1. PROCEDURAL HISTORY

Bronzynski suffered a work-related injury on April 24, 2000, while working for Model Electric, Inc. He fell several feet from the top of a ladder, striking his head on the floor. On January 22, 2002, a hearing was held before the Nebraska Workers' Compensation Court to determine the extent of Bronzynski's injuries. In the award filed February 8, the Workers' Compensation Court determined that Bronzynski's injury resulted in a 15-percent loss of earning power. *Bronzynski v. Model Electric, Inc.*, No. 201-1039, 2002 WL 198546 (Neb. Work. Comp. Ct. Feb. 8, 2002). The court awarded temporary total disability benefits for the period of April 3 to August 13, 2001, permanent partial disability benefits for loss of earning power, future medical expenses, and vocational rehabilitation. *Id.*

On March 28, 2003, Bronzynski filed a motion to enforce the award, seeking payment of various medical expenses and disability benefits. The court dismissed Bronzynski's motion to enforce on April 23, and Bronzynski did not appeal.

Bronzynski filed his application to modify the February 8, 2002, award on November 5, 2003, seeking payment of various medical expenses, temporary total disability benefits for the period of December 17, 2001, to June 16, 2003, vocational rehabilitation benefits, and penalties and fees. A hearing on the application to modify the award was held by a single judge of the Nebraska Workers' Compensation Court on March 31, 2004. In the application, Bronzynski alleged that he "was re-quired to undergo revision fusion surgery of his cervical spine on January 16, 2003 based on findings of a nonunion/pseudo-arthrosis at the site of his previous fusion." He asserted that due to this surgery, he was entitled to further temporary total disability benefits, additional loss of earning power benefits, additional vocational rehabilitation, a 50-percent waiting-time penalty, attorney fees, and interest.

In its award entered June 4, 2004, the trial court concluded that Bronzynski "experienced a material and substantial increase of incapacity . . . sufficient to entitle him to a 25 percent loss of earning power . . . from and after November 5, 2003, the date the Application to Modify Award was filed." The court ordered payment by Model Electric of medical expenses totaling $35,156.14 and attorney fees in the amount of $1,500. However, the court denied Bronzynski's request for other temporary total disability benefits for the period of December 17, 2001, to June 16, 2003. The court explained that the requested period for benefits preceded the date of the application to modify the award, which application was filed on November 5, 2003, and that it was precluded from modifying an award retroactively prior to such date. Model Electric appealed, and Bronzynski cross-appealed.

A review hearing was held by a three-judge panel on October 26, 2004. Model Electric alleged that the trial court had erred in awarding attorney fees and in finding that Bronzynski experienced an increase of incapacity entitling him to an increase in loss of earning power benefits. On cross-appeal, Bronzynski alleged that the trial court had erred in failing to award further temporary total disability benefits, interest, penalties, and attorney fees. In its order of December 29, the review panel reversed the trial court's finding that Bronzynski was entitled to an increase in permanent partial disability benefits and affirmed the court's order of attorney fees and denial of temporary total disability benefits, interest, and penalties. Bronzynski timely appeals this decision.

### 2. MEDICAL TREATMENT

As noted above, on April 24, 2000, Bronzynski suffered a work-related accident, falling several feet from a ladder and striking his head on the floor. "He experienced nearly immediate loss of hearing and ringing in his ears, blurry vision and 'slight pain' in his neck." *Bronzynski v. Model Electric, Inc.*, No. 201-1039, 2002 WL 198546 at *1 (Neb. Work. Comp. Ct. Feb. 8, 2002). Bronzynski's neck pain was subsequently diagnosed as "a 'huge C5C6 disc herniation.' " *Id.*

The record reveals that at least four doctors and a rehabilitation consultant were involved in Bronzynski's case and treatment,

Dr. J.R.S. Froggatt, Dr. Mark Puccioni, Dr. Ric Jensen, Dr. James Bertus, and David Utley. Bronzynski states that Dr. Froggatt performed an "anterior cervical diskectomy and interbody fusion" on his spine on April 3, 2001. Brief for appellant at 7. On May 23, Dr. Froggatt opined that Bronzynski "should probably be fit to attempt to return to the work force." One week later, Dr. Froggatt gave Bronzynski work restrictions, indicating that he could lift or carry a "maximum of 25 to 30 lbs[.]" but was "not to lift at or above the shoulder level."

Dr. Puccioni examined Bronzynski and recorded his findings on September 19, 2001. He recommended that Bronzynski seek pain management and stated that "there were no objective tests that [Dr. Puccioni] could see that would limit [Bronzynski's] work."

On December 4, 2001, Bronzynski was referred to Utley, the rehabilitation consultant, who prepared a "Loss of Earning Capacity Analysis." In the analysis, Utley reported that he considered, inter alia, the lifting restrictions that Dr. Froggatt imposed and Dr. Froggatt's opinion that Bronzynski suffered a " '7% total body disability.' " Utley concluded that Bronzynski "is employable but has sustained a loss of earning capacity of approximately 15%."

On December 17, 2001, Dr. Jensen evaluated Bronzynski and recommended that he obtain conservative treatments for his physical condition and that he undergo "dynamic plain films (flexion/extension) of the cervical spine . . . to assess the status of the fusion with regards to stability and bony consolidation." According to Dr. Jensen, Bronzynski was suffering "sustained posterior cervical pain and bilateral shoulder pain since the time of his operative therapy with regards to the anterior cervical fusion."

On January 18, 2002, Dr. Jensen reported that the flexion-extension dynamic plain films Bronzynski underwent indicated "sagittal rotation at the site of [Bronzynski's] previous fusion at the C5-6 intersegmental level." Dr. Jensen reported that he intended to perform a high-resolution "CT scan" and to follow up with Bronzynski. In his correspondence to Dr. Bertus dated January 21, 2002, Dr. Jensen noted that "[Bronzynski] appears to have reached a maximum level of medical improvement with

respect to his cervical fusion." Subsequently, the Nebraska Workers' Compensation Court held a hearing on January 22 and entered the original February 8 award, wherein it stated that it had relied on, inter alia, the "Loss of Earning Capacity Analysis" by Utley indicating that Bronzynski suffered a 15-percent loss of earning capacity. *Bronzynski v. Model Electric, Inc., supra.*

On February 18, 2002, Dr. Jensen evaluated Bronzynski, and in subsequent correspondence to Dr. Bertus, he reported that the

> [f]lexion/extension dynamic plain film images of the cervical spine have indicated that [Bronzynski] may have a pseudoarthrosis with evidence of sagittal rotation at the C5-6 intersegmental level (site of previous fusion). Additionally, high resolution CT scan imaging of the cervical spine performed at my request on 1/30/02 reveals evidence of pseudoarthrosis and bony non-union at the C5-6 intersegmental level.

At this time, Dr. Jensen indicated the possibility of "revision cervical fusion." On February 18, Dr. Jensen had also provided Bronzynski with a "Return to Work or School" note remarking, "[Bronzynski] is to remain off work until further notice. Cervical spine surgery is planned."

The record indicates that Bronzynski properly requested vocational rehabilitation services as required in the February 8, 2002, award. However, on March 25, 2002, Utley declined to initiate Bronzynski's vocational rehabilitation due to the results of the CT scan imaging and Dr. Jensen's "Return to Work or School" note.

Although the February 8, 2002, award limited the duration of temporary total disability benefits to the period of April 3 to August 13, 2001, Bronzynski requested in a letter dated February 20, 2002, and again in subsequent correspondence of March 7 and 29 and April 30, that Model Electric pay further temporary total disability benefits. These requests appear to have been based on the facts that Bronzynski required additional surgery for his neck and that he had continued to remain in off-work status. However, Model Electric "denied the surgery" and no such payments were tendered.

Bronzynski reports that on January 16, 2003, he underwent a "cervical spinal fusion procedure" performed by Dr. Jensen.

Brief for appellant at 10. Bronzynski was discharged with instructions to "engage in moderate activities only until further notice." On February 17, Dr. Jensen instructed Bronzynski that he was to "maintain light activity restrictions for 1 month additional." On April 10, Dr. Jensen rated Bronzynski's "permanent partial impairment . . . of the whole person with respect to the cervical spine at 14 percent." He further indicated that Bronzynski would reach a maximum level of medical improvement on June 16.

Dr. Jensen recommended that a "Functional Capacity Evaluation [would] further clarify reduction in range of motion of [Bronzynski's] cervical spine and [enable] the assessment and establishment of permanent activity restrictions." The record lacks evidence of any such evaluation subsequent to Bronzynski's January 2003 procedure. Dr. Jensen performed a "Lumbar Spine Physical Capacity Evaluation" on June 6 which indicated work restrictions regarding the length of time Bronzynski could sit, stand, and walk, as well as lifting and carrying limitations. However, Bronzynski's lumbar spine injury was unrelated to the work-related accident in question, and thus, the evaluation as it related to that injury was not relevant to Bronzynski's work restrictions due to the work-related accident.

## III. ASSIGNMENTS OF ERROR

Bronzynski assigns, restated, that the Nebraska Workers' Compensation Court review panel erred (1) in reversing the trial court's finding that he suffered an increase in loss of earning power, (2) in failing to award certain temporary total disability benefits, and (3) in failing to award attorney fees, interest, and waiting-time penalties.

## IV. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

*Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003); *Meredith v. Schwarck Quarries*, 13 Neb. App. 765, 701 N.W.2d 387 (2005).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Id.* Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* However, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## V. ANALYSIS

### 1. Permanent Partial Disability

Bronzynski alleges that the review panel erred in reversing the trial judge's finding that his loss of earning power had increased from 15 percent at the time of the February 8, 2002, award to 25 percent at the time of the June 4, 2004, award. He asserts that there was sufficient evidence to support the trial court's factual conclusions and that the review panel erred in substituting its view of the facts. He contends that the review panel relied on his statement that "as far as he knew, his restrictions were the same as before the second surgery; however, [he had not] worked since before the first trial." Brief for appellant at 13. He further contends that he did not obtain the "Functional Capacity Evaluation" recommended by Dr. Jensen after the January 16, 2003, procedure "because of Model Electric's refusal to pay benefits." *Id.* We agree with the review panel and find that the trial court erred in finding an increase in incapacity and, therefore, in awarding an increase in permanent partial disability benefits. Bronzynski did not fulfill the statutory requirements for modification of an award pursuant to Neb. Rev. Stat. § 48-141 (Reissue 2004).

To obtain a modification, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001). The applicant must prove there exists a material and substantial change for the better or worse in the condition—a

change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had previously been made. *Id.*

Section 48-141 provides, in pertinent part, that

the amount of any agreement or award payable periodically may be modified as follows: . . . after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of *incapacity* due solely to the injury.

(Emphasis supplied.)

■ In the context of body as a whole injuries, an applicant who must fulfill the requirements set forth in § 48-141 by demonstrating a change in incapacity must establish both a change in the employee's physical condition, or impairment, and a change in the employee's disability. See *Gibson v. Kurt Mfg.*, 255 Neb. 255, 583 N.W.2d 767 (1998) (finding that without showing of change in applicant employee's physical condition and that such change was cause of change in earning capacity, modification of prior award was improper).

■ The term "impairment" is a medical assessment, while the term "disability" is a legal issue. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). Under the workers' compensation law, "disability" refers to loss of earning capacity and not to functional or medical loss alone. See *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959). Therefore, as a legal term, "disability" is construed in terms of "impairment" and its effect on earning capacity. Contrary to Bronzynski's apparent position, it is not self-evident that an increase in physical impairment results in an increase in disability.

[D]isability for purposes of [the workers' compensation] statute[s] is defined in terms of employability and earning capacity rather than in terms of loss of bodily function. In defining total disability, losses in bodily function are not important in themselves but are only important insofar as they relate to earning capacity and the loss thereof.

*Wolfe v. American Community Stores*, 205 Neb. 763, 765-66, 290 N.W.2d 195, 197-98 (1980). Accord, *Miller v. Peterson,* 165 Neb. 344, 85 N.W.2d 700 (1957); *Shotwell v. Industrial Builders, Inc.,* 187 Neb. 320, 190 N.W.2d 624 (1971).

■ The terminology has been further clarified by the Nebraska Supreme Court, which explained that " ' " " '[p]ermanent medical impairment is related directly to the health status of the individual, whereas disability can be determined only within the context of the personal, social, or *occupational* demands, or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment.' " ' " (Emphasis supplied.) *Green v. Drivers Mgmt., Inc.*, 263 Neb. at 204-05, 639 N.W.2d at 102 (quoting *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999) (Gerrard, J., concurring)). Given the foregoing definitions, showing a change in "incapacity," as provided in § 48-141, requires a showing of change in impairment and change in disability.

■ A comparison of the conclusions of Drs. Froggatt and Jensen indicates that Bronzynski had suffered an increase in physical impairment since the January 2002 hearing. In the award entered as a result of that hearing, the court expressed that it had relied on an opinion of Dr. Froggatt wherein Bronzynski was determined to have a 7-percent impairment rating. *Bronzynski v. Model Electric, Inc.*, No. 201-1039, 2002 WL 198546 (Neb. Work. Comp. Ct. Feb. 8, 2002). Dr. Jensen now indicates that Bronzynski has a "permanent partial impairment rating of the whole person with respect to the cervical spine [of] 14 percent." However, an impairment rating is simply a medical assessment of what physical abilities have been adversely affected or lost by an injury. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003). Bronzynski relies on *Swanson* for the proposition that the court can award an increased loss of earning capacity rating "[o]nce an employee submits evidence of either a permanent impairment or physician-ordered permanent physical restrictions." Brief for appellant at 15. Yet, *Swanson* also indicates that " 'the ultimate issue is not the extent of anatomical disability but that of vocational disability, the percentage of which does not definitively depend on the medical proof regarding a percentage of anatomical disability.' " 267 Neb. at 143, 672 N.W.2d at 414-15.

The trial court reviewed the evidence and found:

Dr. Jensen reported that [Bronzynski] reached maximum medical improvement subsequent to the second cervical

fusion on June 16, 2003, and experienced a 14 percent permanent functional impairment of the whole person . . . . His evaluation of permanent impairment is twice the degree of impairment first assessed by Dr. Frogg[a]tt . . . . [Bronzynski] described his current limitations regarding activities. From the medical evidence and the testimony of [Bronzynski], which was credible, I find [that he] has experienced a material and substantial increase of incapacity due solely to the original accident and cervical injury, sufficient to entitle him to a 25 percent loss of earning power . . . from and after November 5, 2003, the date the Application to Modify Award was filed.

Nowhere does Bronzynski argue that he has sustained an increase in loss of earning capacity. Indeed, his argument is based upon the premise that an increase in physical impairment is synonymous with an increase in incapacity. As previously indicated, this is not the law in Nebraska. Moreover, Bronzynski's testimony indicates that there has been little change in his condition since the initial award. When asked as follows by Model Electric's attorney whether the restrictions Dr. Froggatt imposed after the first surgical procedure were an accurate assessment of his current abilities, Bronzynski responded thus:

Q. [Y]ou've had a chance to review [Dr. Froggatt's medical report of May 30, 2001]. Do you recall seeing . . . the last paragraph that says lifting maximum of 25 to 30 pounds carrying, not to lift at or above shoulder level?

A. Yes.

Q. Was that an accurate assessment of your abilities at that time?

A. As far as I know. As I remember.

Q. Has Dr. Jensen since your surgery of January of 2003 given you any idea of what your permanent restrictions are?

A. As far as I know it's basically the same.

Q. Okay.

A. Stuff above my head.

Q. Same restrictions?

A. Basically, yeah.

Q. Okay. In fact, isn't it true that there hasn't been . . . any real change in your abilities after the surgery of January

2003 [as compared to] those abilities you had prior to January of 2003, isn't that right?

A. You mean on restrictions?

Q. Yes.

A. As far as I know.

Bronzynski argues that he did not have a basis of knowledge of current restrictions because he had been unable to work since before the first trial. Additionally, he asserts that he was unable to obtain a "Functional Capacity Evaluation to determine the impact these restrictions would have on his ability to obtain employment" because Model Electric had refused to pay benefits. Brief for appellant at 13. However, Bronzynski was required to show a substantial change in incapacity and, pursuant to Nebraska law, was obligated to show a change in disability or earning capacity. The record lacks evidence of a change in Bronzynski's disability or earning capacity. Therefore, we conclude that the trial court was clearly wrong in finding that Bronzynski proved by a preponderance of the evidence that there had been a substantial increase in his incapacity. We find no merit to Bronzynski's assigned error that the Workers' Compensation Court review panel erred in reversing the trial judge's finding that Bronzynski's loss of earning power had increased.

## 2. TEMPORARY TOTAL DISABILITY

Bronzynski's application to modify the award requests temporary total disability benefits from December 17, 2001, to June 16, 2003, the date by which Bronzynski had reached maximum medical improvement after the January 2003 procedure according to Dr. Jensen. Bronzynski assigns that the Workers' Compensation Court review panel erred in failing to award "temporary total disability benefits from at least February 18, 2002, which is the date Dr. Jensen took [him] off work pending surgery . . . until such time as [he] completes his vocational rehabilitation." All the above dates predate the November 5, 2003, filing of the application to modify.

### (a) Retroactive Modification

Bronzynski contends that temporary total disability benefits should be expressly awarded for the requested time period because Model Electric had refused to pay medical benefits as

dictated by the original award. More specifically, Bronzynski argues, Model Electric's refusal should be construed by the court as a de facto application for modification, and as such, all the statutory burdens associated with an application for modification fall on Model Electric to fulfill. Consequently, Bronzynski argues that Model Electric attempted to "unilaterally modify" the award by refusing to pay for his requested medical expenses and that therefore, we must construe the filing date for Model Electric's de facto application to modify as the date of Model Electric's refusal, June 28, 2002.

This argument is without merit. Model Electric denied medical benefits to Bronzynski; i.e., he wanted surgery performed, and Model Electric would not pay for it. The fact that this denial related to future medical benefits and not to disability benefits previously ordered in the 2002 award is critical. Bronzynski is equating apples to oranges, or, rather, previously awarded medical benefits to previously awarded disability benefits. Therefore, the filing date of Bronzynski's "Application to Modify Award" must be construed as the operative date for awarding retroactive benefits, and we affirm the decision of the review panel upholding the trial court's determination that it was precluded from modifying the award retroactively prior to the filing date of Bronzynski's application.

It is well established that a modification to a Nebraska Workers' Compensation Court award cannot be applied retroactively to a date earlier than that on which the application for modification was filed. See, *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001); *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000); *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

Bronzynski was originally awarded temporary total disability benefits for the period of April 3 to August 13, 2001, the latter being the date by which Dr. Froggatt considers Bronzynski to have reached maximum medical improvement. See *Bronzynski v. Model Electric, Inc.*, No. 201-1039, 2002 WL 198546 (Neb. Work. Comp. Ct. Feb. 8, 2002). The record reveals that such payments were made and that there was no cessation of payments related to the award of temporary total disability benefits. The

fact that Bronzynski had further impairment and treatment due to the work-related injury does not automatically entitle him to further temporary total disability payments.

Bronzynski's correspondence to Model Electric indicates that he requested temporary total disability benefits based on the "Return to Work or School" note from Dr. Jensen and an "X-ray report dated 1/30/02." However, this request was incongruent with the original 2002 award of temporary total disability benefits, and all those benefits had been paid. Bronzynski's request for further temporary total disability benefits would have properly been the subject of an application for modification when he became aware of the need for further medical treatment. An application to modify the original award is essential before a determination can be made as to the merit of a claim for further temporary benefits. As such, temporary total disability benefits cannot be awarded retroactively prior to the date on which the application to modify was filed in this case. See, *Hagelstein v. Swift-Eckrich, supra*; *Sheldon-Zimbelman v. Bryan Memorial Hosp., supra*; *Starks v. Cornhusker Packing Co., supra*.

Therefore, we affirm the review panel's decision upholding the trial court's determination that it was precluded from modifying the 2002 award to include temporary total disability benefits prior to the filing date of the application to modify. Bronzynski's argument is without merit.

#### (b) Nonparticipation in Vocational Rehabilitation

Bronzynski maintains that Model Electric "would have been liable for temporary total disability payments during the time [he] was participating in the vocational rehabilitation plan and likewise[,] Model Electric . . . should be liable for temporary total disability payments for preventing [him] from participating in a vocational rehabilitation plan." Brief for appellant at 27. He contends that Model Electric's refusal to pay medical expenses delayed his revision fusion surgery and that as a result, Utley declined to initiate his vocational rehabilitation. Therefore, Bronzynski argues, he was unable to participate in vocational rehabilitation and, thus, was entitled to temporary total disability benefits. However, this argument is not supported in the law, and therefore, it is without merit.

Neb. Rev. Stat. § 48-121(5) (Reissue 2004) articulates:

The employee shall be entitled to compensation from his or her employer for temporary disability while undergoing physical or medical rehabilitation and while undergoing vocational rehabilitation whether such vocational rehabilitation is voluntarily offered by the employer and accepted by the employee or is ordered by the Nebraska Workers' Compensation Court or any judge of the compensation court.

Section 48-121(5) makes clear that Bronzynski was entitled to temporary total disability benefits for vocational rehabilitation purposes only if he was actively undergoing rehabilitation. Bronzynski offers no authority, and we have found none, that supports his contention. Whatever the reason for his nonparticipation in a rehabilitation program, the record reflects that Bronzynski was not actively receiving vocational rehabilitation and was therefore not entitled to compensation.

Hence, we affirm the trial court's determination that Bronzynski is not entitled to the requested temporary total disability benefits, and we find that the review panel did not err in affirming the trial court's finding. Bronzynski's argument is without merit.

### 3. OTHER PENALTIES

Bronzynski's application to modify the award requested "a 50% waiting penalty, interest and attorney's fees." Bronzynski now assigns as error that the Workers' Compensation Court review panel failed to award interest, a 50-percent waiting-time penalty, attorney fees, and costs. He argues that "no reasonable controversy existed" and that "[o]nly by [the court's] enforcing the penalty provisions set out in the workers['] compensation statutes will employers quit placing the burden of going back before the court to enforce the award previously entered on employees and follow the modification procedures." Brief for appellant at 28-29. The trial court awarded attorney fees based on its award of delinquent medical payments, finding that "no reasonable controversy existed regarding the necessity and reasonableness of the second cervical fusion." We affirm the review panel's findings that attorney fees were properly ordered

concerning the award for medical expenses and that no interest or waiting-time penalty was appropriate.

Section 48-125 provides, in pertinent part:

(1) Except as hereinafter provided, all amounts of *compensation* payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death, except that fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the compensation court. . . . Whenever the employer refuses payment of compensation or *medical payments* subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay *medical payments* subject to such section after thirty days' notice has been given of the obligation for *medical payments*, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award. . . .

(2) When an attorney's fee is allowed pursuant to this section, there shall further be assessed against the employer an amount of interest on the final award obtained . . . . Interest shall apply only to those *weekly compensation benefits* awarded which have accrued at the time payment is made by the employer.

(Emphasis supplied.)

Where there is no reasonable controversy regarding an employee's entitlement to workers' compensation, § 48-125 authorizes an award to the employee of an attorney fee and a 50-percent payment for waiting time on delinquent compensation payments. See *Roesler v. Farmland Foods*, 232 Neb. 842, 442 N.W.2d 398 (1989). However, it is important to understand the meaning of "compensation" as it is used in § 48-125. The Nebraska Supreme Court explained in *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 553, 451 N.W.2d 910, 920 (1990), that " '[c]ompensation,' used in § 48-125(1) in reference to

additional sums for waiting time, an attorney fee, and interest, means periodic disability or indemnity benefits payable on account of the employee's work-related injury or death." The Nebraska Legislature further clarified matters when it later amended § 48-125 regarding attorney fees only, adding language providing specifically for attorney fees for delinquent "medical payments." See *id.*

Taken together, these authorities make it apparent that a 50-percent waiting-time penalty cannot be awarded on the basis of an award of delinquent medical payments; a waiting-time penalty is available only on awards of delinquent payments of disability or indemnity benefits, not on awards of "medical payments." Additionally, we have acknowledged above that when an attorney fee is allowed pursuant to § 48-125, interest shall be assessed on the final award of weekly compensation benefits. Thus, § 48-125 makes clear that interest, which would otherwise be assessed when attorney fees are awarded, is not proper in the instant case because an award of medical payments is plainly not one of "weekly compensation benefits." See *id.*

The trial court modified the original award only to the extent that it increased Bronzynski's permanent partial disability benefits and ordered Model Electric to pay medical expenses. The review panel reversed the trial court's finding with regard to the permanent partial disability benefits, and as such, no attorney fee, waiting-time penalty, or interest could properly be assessed with regard to that portion of the award. However, the trial court found that "no reasonable controversy existed regarding the necessity and reasonableness of the second cervical fusion." In addition, the court determined that "[t]he medical expenses were provided [to Model Electric] more than 30 days in advance of trial." As such, the court's award of attorney fees regarding the delinquent medical expenses was proper, pursuant to § 48-125. Therefore, Bronzynski's assignment of error is without merit, and we affirm the decision of the review panel as it relates to attorney fees, waiting-time penalties, and interest.

## VI. CONCLUSION

The judgment of the Workers' Compensation Court review panel is affirmed. The review panel properly reversed the trial

court's award of further permanent partial disability benefits, and it properly affirmed the court's denial of temporary total disability benefits and further attorney fees, interest, and waiting-time penalties.

AFFIRMED.