LORNA RADER, APPELLANT, V.
SPEER AUTO, APPELLEE.
___ N.W.2d ___

Filed December 27, 2013.    No. S-13-229.

1.  **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2.  ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.

3.  ____: ____. Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions.

4.  **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

5.  **Workers' Compensation: Jurisdiction: Statutes.** As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute.

6.  **Workers' Compensation: Proof.** To obtain a modification of an award, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident.

7.  ____: ____. To obtain a modification of a prior award, the applicant must prove there exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had been previously made.

8.  **Workers' Compensation.** Whether an applicant's incapacity has increased under the terms of Neb. Rev. Stat. § 48-141 (Reissue 2010) is a finding of fact.

9.  **Workers' Compensation: Appeal and Error.** Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

10. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

11. **Workers' Compensation: Proof.** To establish a change in incapacity under Neb. Rev. Stat. § 48-141 (Reissue 2010), an applicant must show a change in impairment and a change in disability.

12. **Workers' Compensation: Words and Phrases.** In a workers' compensation context, impairment refers to a medical assessment, whereas disability relates to employability.

13. ____: ____. Under the workers' compensation law, "disability" refers to loss of earning capacity and not to functional or medical loss alone.

14. ____: ____. Disability for purposes of the workers' compensation statutes is defined in terms of employability and earning capacity rather than in terms of loss of bodily function. In defining total disability, losses in bodily function are not important in themselves but are only important insofar as they relate to earning capacity and the loss thereof.

Appeal from the Workers' Compensation Court: John R. Hoffert, Judge. Affirmed.

Roger D. Moore, of Rehm, Bennett & Moore, P.C., L.L.O., for appellant.

Jon S. Reid, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Lorna Rader sustained a compensable injury while she was employed by Speer Auto. The Nebraska Workers' Compensation Court filed an "Award" on March 30, 2007, and after Rader filed a petition to modify, the compensation court filed a "Further Award" on April 10, 2009. Rader filed another petition to modify on June 29, alleging that her "injury had materially and substantially worsened since April 10, 2009, necessitating a modification of the April 10, 2009 Further Award." Except for some medical expenses, Rader's petition to modify was denied.

In its order filed February 15, 2013, the Workers' Compensation Court found that Rader had not established a material and substantial change for the worse in her condition as required by Neb. Rev. Stat. § 48-141(2) (Reissue 2010) and that a modification was not warranted. It also found that Speer Auto had paid "in excess of the 300 weeks" and concluded in the alternative that under Neb. Rev. Stat. § 48-121(2)

(Reissue 2010), Speer Auto could not be ordered to pay more even if Rader had established entitlement to a modification. Rader appeals.

Because we determine that the compensation court did not err when it found that Rader did not prove by a preponderance of the evidence a material and substantial change for the worse in her condition warranting a modification of the award under § 48-141(2), we affirm the order of the compensation court.

## STATEMENT OF FACTS

On December 14, 2005, Rader was employed by Speer Auto when she suffered an injury to her low back. Rader filed a petition with the Workers' Compensation Court, and on March 30, 2007, the compensation court filed an award finding that Rader's injury was compensable. The compensation court found that Rader was employed by Speer Auto on the date of her accident and that she suffered an accident arising out of and in the course and scope of her employment. The compensation court noted that the parties stipulated that on the date of her accident, Rader earned an average weekly wage of $632.33. The compensation court found that Rader was temporarily totally disabled for 2⅐ weeks and that under Neb. Rev. Stat. § 48-119 (Reissue 2010), due to "the lack of evidence at trial that [Rader's] disability continued for six weeks or longer, the first seven calendar days of disability are not compensable." Thus, the compensation court determined that Rader was entitled to $481.77 for the period of total disability. The compensation court also noted that Rader had yet to meet maximum medical improvement, so "the issues of the permanency of [Rader's] low back injury as well as her entitlement to vocational rehabilitation benefits are not yet ripe for resolution." The compensation court found that Rader was entitled to medical benefits, past and future.

On July 21, 2008, Rader filed a petition to modify the March 30, 2007, award. On April 10, 2009, the Workers' Compensation Court filed a "Further Award" finding, inter alia, that Rader had reached maximum medical improvement and that she had sustained a loss of earning power of 50 percent.

The compensation court considered at length Rader's entitlement to further medical benefits in the form of surgery. Relying on expert opinion, the compensation court determined that Rader's psychological condition was a contributing factor to her report of pain and that surgery was not warranted at that time. The compensation court determined that Rader was entitled to permanent partial disability benefits and vocational rehabilitation benefits.

On June 29, 2012, Rader filed a petition to modify the April 10, 2009, "Further Award," alleging that her "injury has materially and substantially worsened since April 10, 2009." After trial, the Workers' Compensation Court filed a "Further Award" on February 15, 2013, and, except for the award of some injury-related medical expenses, the court denied Rader's petition to modify. This is the order from which Rader appeals. Speer Auto did not cross-appeal from the portion of the order directing it to pay certain medical expenses.

In its February 15, 2013, order, the Workers' Compensation Court noted that Rader was claiming an increase in her loss of earning capacity, but less than permanent total disability, and that thus, Rader was seeking permanent partial compensation. The compensation court found that Speer Auto had paid more than 300 weeks of disability benefits to Rader, and the court then referred to § 48-121(2). Section 48-121 generally provides for compensation for partial disability.

Section 48-121 provides in part:

The following schedule of compensation is hereby established for injuries resulting in disability:

. . . .

(2) For disability partial in character, except the particular cases mentioned in subdivision (3) of this section, the compensation shall be sixty-six and two-thirds percent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01. This compensation shall be paid during the period of such partial disability but not beyond three hundred weeks. Should total disability be followed by

partial disability, the period of three hundred weeks men-
tioned in this subdivision shall be reduced by the number
of weeks during which compensation was paid for such
total disability.

Although the Workers' Compensation Court read § 48-121(2)
as precluding modification where, as here, a worker seeking
permanent partial benefits had received benefits beyond 300
weeks, it nevertheless considered the substance of her petition
to modify and determined that "[Rader's] request for modifica-
tion must fail in any event." The court analyzed the medical
evidence presented along with Rader's testimony, and found
that regardless of its interpretation of § 48-121(2), the evidence
did not support a modification.

The record shows that Rader testified before the compensa-
tion court and stated that she had had surgery in August 2012
for an injury not related to the low-back injury at issue in this
case. Rader also testified that her level of functioning had
decreased since the last time she was before the compensation
court. She testified that she could stand for shorter periods and
that her ability to bend and stoop had decreased. Rader further
testified that the last time she was before the compensation
court, she could lift a 20-pound weight from the floor, but now,
without squatting or moving to her knees, she could lift 15
pounds at most from the floor. Rader further testified that the
August surgery had not affected her tolerance for lifting, stand-
ing, sitting, bending, or stooping.

The compensation court received many medical reports into
the record. The record contains a supplemental report by Dr.
Dean K. Wampler dated October 30, 2012. In the supplemen-
tal report, Dr. Wampler noted that he had evaluated Rader
in November 2008 and had issued a supplemental report in
December. The compensation court had relied in part on Dr.
Wampler's opinion in the court's April 10, 2009, "Further
Award." In Dr. Wampler's supplemental report dated October
30, 2012, he reviewed Rader's medical information and opined
that Rader had not experienced a material or substantial change
with respect to her low-back injury at issue in this case. Dr.
Wampler stated that

it is my opinion with a reasonable degree of medical certainty that . . . Rader has not experienced any substantial or material change in her lumbar spine injury. Instead, her worsening function and increasing symptoms are attributable to an entirely different medical condition in her cervical spine that was most likely induced by a motor vehicle accident in 2004.

Dr. Wampler also stated that the cervical spine injury not at issue in this case "explains [Rader's] diminished function during the FCE [functional capacity evaluation] of August 2011."

The record also contains supplemental reports by Alfred J. Marchisio, the court-appointed counselor. In his initial report dated November 18, 2008, Marchisio determined that Rader had sustained a 45- to 50-percent loss of earning capacity, and the compensation court relied on Marchisio's opinion in its April 10, 2009, "Further Award" when the court determined that Rader had sustained a 50-percent loss of earning capacity. In Marchisio's supplemental report dated November 5, 2012, he stated that based upon the restrictions outlined in the August 2, 2011, functional capacity evaluation, he determined Rader's loss of earning capacity would be in "the 55-60 percent range." Marchisio based his opinion on Rader's posture and the amount of weight she could lift or carry. Marchisio also noted that Rader complained of pain in her low back, that her right leg would periodically "'give out,'" and that she had difficulty sleeping.

The record also contains a report from Karen L. Stricklett, a vocational rehabilitation consultant, which report is dated November 6, 2012. Stricklett stated in the report that she reviewed medical reports and records concerning Rader along with vocational records from Marchisio. In her review of the information, Stricklett noted that Rader's restrictions that were recommended by one of her treating physicians on September 13, 2008, and the restrictions noted in the August 2, 2011, functional capacity evaluation were "very similar." Stricklett further stated that "[t]he most recent medical records indicate that . . . Rader's ongoing symptoms are related to her cervical spine and are not related to the low back injury that she

sustained on 12/14/05." Stricklett concluded her report by stating that Rader had not experienced a material and substantial change in her loss of earning capacity and that nothing in Rader's condition had changed since the compensation court's April 10, 2009, "Further Award." Stricklett stated in the report:

> In conclusion, based upon the information that I have reviewed in connection with this case, I do not feel that . . . Rader has experienced a material and substantial increase in her loss of earning capacity since the 4/10/09 Further Award was entered by Judge Hoffert. This opinion is due to the fact that her restrictions are essentially the same as they were when . . . Marchisio issued his prior loss of earning capacity opinion and nothing else has changed since the 4/10/09 Award other than the fact that . . . Rade[r] has undergone additional medical treatment for a cervical problem that is unrelated to her 12/14/05 low back injury.

In rendering its decision on the merits, the court referred to "the opinion of the court appointed counselor as set forth in his report of November 5, 2012." In its order, the court stated:

> In that self-titled Supplemental Report, [the court-appointed counselor] opines that [Rader's] loss of earning power has increased from the 50 percent originally found by the Court in its earlier Award to 55-60 percent. . . . This scenario was based upon the restrictions set forth in the Functional Capacity Evaluation . . . .

Given this evidence, the compensation court found that Rader experienced a "loss of earning power of an additional 5 to 10 percent." However, given the record as a whole, this loss of earning power alone "does not serve to establish a material and substantial change for the worse in her condition as required by . . . § 48-141(2)."

Section 48-141 generally governs the Workers' Compensation Court's authority to modify an award. Section 48-141 provides:

> All amounts paid by an employer or by an insurance company carrying such risk, as the case may be, and received by the employee or his or her dependents by

lump-sum payments pursuant to section 48-139 shall be final and not subject to readjustment if the lump-sum settlement is in conformity with the Nebraska Workers' Compensation Act, unless the settlement is procured by fraud, but *the amount of any agreement or award payable periodically may be modified as follows*: (1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) *if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury* or that the condition of a dependent has changed as to age or marriage or by reason of the death of the dependent. In such case, the same procedure shall be followed as in sections 48-173 to 48-185 in case of disputed claim for compensation.

(Emphasis supplied.)

Rader appeals.

## ASSIGNMENTS OF ERROR

Rader generally claims, restated, that the Workers' Compensation Court erred when, except for certain medical expenses, it denied her petition to modify. Although she also challenges the Workers' Compensation Court's interpretation of the 300-week provision in § 48-121(2), we do not consider this argument because it is not necessary to our resolution of this appeal.

## STANDARDS OF REVIEW

[1-3] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. See, *id*.; *Cervantes v. Omaha Steel Castings Co*., 20 Neb. App. 695, 831 N.W.2d 709 (2013). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *VanKirk v. Central Community College*, 285 Neb. 231, 826 N.W.2d 277 (2013).

## ANALYSIS

In the February 15, 2013, order, the Workers' Compensation Court found, based on the evidence, that Rader had not met her burden of proving that a material and substantial change for the worse in her condition warranted a modification of the April 10, 2009, "Further Award." Accordingly, except for certain medical expenses not at issue in this appeal, the compensation court denied Rader's petition to modify the April 10 "Further Award." Rader claims on appeal that the compensation court erred when it denied her petition to modify.

[4] In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co*., 285 Neb. 568, 828 N.W.2d 154 (2013). In this case, Speer Auto, the employer, was the successful party and we view the evidence in its favor and give it the benefit of all favorable inferences. So viewing the evidence, we affirm.

[5] Although both parties question the jurisdiction of the Workers' Compensation Court, we conclude that the Workers' Compensation Court had subject matter jurisdiction over Rader's petition to modify the April 10, 2009, "Further Award" under § 48-141. As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Stueve v. Valmont Indus*., 277 Neb. 292, 761 N.W.2d

544 (2009). More specifically, § 48-141, quoted earlier in this opinion, governs the compensation court's power to modify an award. Section 48-141 provides:

> [T]he amount of any agreement or award payable periodically may be modified as follows: . . . (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury.

See, also, Neb. Rev. Stat. § 48-162.01(7) (Reissue 2010).

Rader filed her petition to modify the April 10, 2009, "Further Award" on June 29, 2012, which was more than 6 months after the April 10, 2009, award was filed. Accordingly, the Workers' Compensation Court had jurisdiction under § 48-141 to determine whether such modification was warranted.

[6,7] Nebraska case law provides that in order to obtain a modification of an award, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001); *McKay v. Hershey Food Corp.*, 16 Neb. App. 79, 740 N.W.2d 378 (2007). The applicant must prove there exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had been previously made. *Lowe v. Drivers Mgmt., Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007); *Hagelstein v. Swift-Eckrich, supra*.

[8-10] We have stated that whether an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact, see *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998), and upon appellate review, the findings of fact made by the trial judge have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong, see, *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013); *Hagelstein v. Swift-Eckrich, supra*. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an

appellate court is precluded from substituting its view of the facts for that of the compensation court. *Hagelstein v. Swift-Eckrich, supra.*

[11,12] The appellate courts of this State have discussed "incapacity" as that term is used in § 48-141. In *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 495, 825 N.W.2d 820, 827 (2013), the Nebraska Court of Appeals summarized the two requisite showings needed to establish a change in incapacity under § 48-141 and stated: "To establish a change in incapacity, an applicant must show a change in impairment and a change in disability. . . . Impairment refers to a medical assessment whereas disability relates to employability."

[13,14] In *Bronzynski v. Model Electric*, 14 Neb. App. 355, 707 N.W.2d 46 (2005), the Nebraska Court of Appeals explained that an applicant who seeks to fulfill the requirements set forth in § 48-141 by demonstrating a change in incapacity must establish both a change in the employee's physical condition, or impairment, and a change in the employee's disability. The term "impairment" is a medical assessment, whereas the term "disability" is a legal issue. *Id.* Under the workers' compensation law, "disability" refers to loss of earning capacity and not to functional or medical loss alone. *Id.*

We have previously stated:

> [D]isability for purposes of [the workers' compensation] statute[s] is defined in terms of employability and earning capacity rather than in terms of loss of bodily function. In defining total disability, losses in bodily function are not important in themselves but are only important insofar as they relate to earning capacity and the loss thereof.

*Wolfe v. American Community Stores*, 205 Neb. 763, 765-66, 290 N.W.2d 195, 197-98 (1980).

We have further clarified the terminology by explaining that "'"[p]ermanent medical impairment is related directly to the health status of the individual, whereas disability can be determined only within the context of the personal, social, or occupational demands, or statutory and regulatory requirements that the individual is unable to meet as a result of

the impairment.'"'" *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 204-05, 639 N.W.2d 94, 102 (2002) (quoting *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999) (Gerrard, J., concurring; Hendry, C.J., and Miller-Lerman, J., join)). Given the foregoing definitions, showing a change in "incapacity," as provided in § 48-141, requires a showing of change in impairment and a change in disability.

With this framework in mind, the record shows that with respect to disability, the compensation court credited the opinion of the court-appointed counselor, Marchisio, as set forth in his "Supplemental Report" dated November 5, 2012. The compensation court in effect found that Rader established a change in disability. In his report, Marchisio stated that Rader's loss of earning power had increased from the 50 percent found by the compensation court in its April 10, 2009, order to 55 to 60 percent. Marchisio's opinion was based in part on a functional capacity evaluation. Although there were competing loss of earning power opinions, the trial judge was entitled to accept the opinion of one expert over another. See *Lowe v. Drivers Mgmt., Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007).

Elsewhere in the record, with respect to impairment, the evidence shows that an expert determined that Rader did not experience a material or substantial change in her condition. A fact finder could therefore determine on this record that Rader failed to prove a change in impairment. The supplemental report by Dr. Wampler states that he reviewed Rader's medical information and determined that Rader had "not experienced any substantial or material change" in her low-back injury that is at issue in this case. Instead, Dr. Wampler found that Rader's worsening function and increasing symptoms were "attributable to an entirely different medical condition."

"[T]o obtain a modification of a prior award, '[t]he applicant must prove there exists a material and substantial change for the better or worse in the condition.'" *Id.* at 738, 743 N.W.2d at 89 (quoting *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001)). Although the Workers' Compensation Court found a modest increase in the loss of earning power, which would support a worsening of disability, given the

record as a whole, Rader failed to establish a worsening of impairment as the Workers' Compensation Court implicitly found. See *Bennett v. J. C. Robinson Seed Co.*, 7 Neb. App. 525, 529, 583 N.W.2d 370, 373 (1998) (stating that "where a claimant is unable to demonstrate that his physical condition has changed since the prior award, a compensation court does not commit error in refusing to modify the previous award"), *disapproved on other grounds*, *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000).

The Workers' Compensation Court did not find an increase in incapacity under § 48-141. Whether an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. See *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998). Because the order of the Workers' Compensation Court is supported by the record and the findings are not clearly wrong, we find no error.

Because we determine that the compensation court did not err when it found that Rader failed to establish that her incapacity had increased under the terms of § 48-141 and was not entitled to a modification, we do not comment on the compensation court's interpretation of § 48-121(2). See *White v. Kohout*, 286 Neb. 700, 712, ___ N.W.2d ___, ____ (2013) (stating that "[a]n appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it").

## CONCLUSION

Given the record and the Workers' Compensation Court's findings, we determine that the Workers' Compensation Court did not err in its February 15, 2013, order, in which it found that Rader failed to establish a material and substantial change for the worse in her condition warranting a modification of the April 10, 2009, "Further Award." The remainder of the order of February 15, 2013, was not challenged on appeal. Therefore, we affirm.

AFFIRMED.